```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

**MEDICINE SHOPPE INTERNATIONAL, INC.,** )
                                                              )
        **Plaintiff,**            )
                                                              )
           vs.                         )         No. 4:04CV699-DJS
                                                               )
**PLUNKETT DRUG, INC. and**          )
**WAYNE SCHULTE,**                   )
                                                                )
        **Defendants.**             )

## ORDER

       Plaintiff Medicine Shoppe alleges that defendants Plunkett Drug, Inc. and Wayne Schulte entered into a License Agreement with plaintiff governing defendants' operation of a Medicine Shoppe pharmacy in Mena, Arkansas. Defendant Schulte, in his capacity as President of defendant Plunkett, executed the License Agreement on behalf of Plunkett and also personally guaranteed Plunkett's performance under the agreement. Defendant Schulte, a pharmacist, is the sole shareholder of Plunkett. Now before the Court is plaintiff's motion for partial summary judgment on the issue of defendants' liability under Count I of the complaint, a claim that defendants breached the License Agreement by transferring the pharmacy without plaintiff's approval.

       The material undisputed facts established for purposes of the summary judgment motion are as follows. Section VIII of the License Agreement provides in pertinent part:

## ASSIGNMENT

Except as provided herein, Licensee may not voluntarily, or by operation of law, sell, assign, transfer, convey, pledge, hypothecate or otherwise encumber this Agreement or any right or interest thereunder without Grantor's written consent.
...
In the event Licensee receives a bona fide offer to purchase or otherwise acquire the interest of Licensee in this Agreement, or the pharmacy operated by Licensee hereunder or a substantial part of the assets thereof, which offer Licensee intends to accept, Licensee shall give written notice to Grantor of such offer and such intent, and of the terms and conditions of such proposed purchase or other acquisition. In addition, Licensee shall provide Grantor with such other information concerning the proposed offer as Grantor may request. Grantor may thereupon purchase or otherwise acquire from Licensee Licensee's interest in this Agreement or the pharmacy operated by Licensee hereunder or a substantial part of the assets thereof, by giving written notice, within a 30-day period following receipt of such notice from Licensee, of Grantor's desire to so purchase or acquire such interest or pharmacy or assets ("Right of First Refusal"). The terms of Grantor's purchase under such Right of First Refusal shall be the same terms as set out in such bona fide offer.
...
If Grantor does not purchase or otherwise acquire such interest in this Agreement, the pharmacy, its assets or such stock, in accordance with the foregoing, Licensee may sell, transfer and assign the same hereunder according to the terms of such offer upon receipt of Grantor's express written consent thereto. Except as herein provided, Grantor's consent shall not be withheld if the proposed transferee (a) is not a competitor of Grantor or its affiliates, (b) is adjudged by Grantor to be financially responsible and of good repute, (c) pays to Grantor the then current transfer fee charged by Grantor for administering such transfer, including training and consulting services, and (d) executes a standard License Agreement in the form then in use by Grantor.

License Agreement [Doc. #18.1], pp.5-6.[1]

Via letters written by his attorney, defendant Schulte in August 2003 advised plaintiff that he wished to retire for health reasons and therefore wished to terminate the License Agreement, which would expire in 2006. Plaintiff's November 20, 2003 response stated its expectation that Mr. Schulte would honor his contractual commitments, and either operate the pharmacy through October 12, 2006 or effect a transfer of the store in accordance with the terms of the License Agreement. By letter dated March 8, 2004, defendant Schulte invoked Section VIII of the License Agreement and described a bona fide purchase offer he had received for the pharmacy. Plaintiff's March 9 letter in response requested additional information concerning the unidentified proposed transferee and asserted that, separate from plaintiff's right of first refusal, the License Agreement required Schulte and Plunkett to obtain plaintiff's express written consent to any sale, which would be conditioned upon the purchaser's payment of the current transfer fee and execution of the standard license agreement.

Mr. Schulte's counsel stated in a responsive letter that the prospective purchaser did not wish to enter into a relationship with plaintiff. Plaintiff's letter dated March 17, 2004 again reiterated the obligation of the licensees to obtain plaintiff's

---

[1] The copy of the License Agreement filed as Exhibit 1 to the complaint [Doc. #1.1] had missing pages. A complete copy of the License Agreement [Doc. #18.1] was later filed by leave of Court.

consent to any sale of the pharmacy, and stated that the License Agreement does not give Mr. Schulte the right to sell the pharmacy to a buyer who does not plan to enter into a relationship with plaintiff.[2]  Defendants sold the pharmacy to Buzz and Kay Garner on or about April 8, 2004.  Plaintiff never gave consent, in writing or otherwise, to defendants' sale of the pharmacy to the Garners.

The language of Section VIII of the License Agreement clearly creates, entirely independent of one another, plaintiff's right of first refusal with respect to any bona fide purchase offer for the pharmacy, and a separate obligation of the licensees to obtain plaintiff's written consent to any sale of the pharmacy. The language further clearly permits plaintiff to condition such consent upon, among other things, the prospective purchaser's payment of a transfer fee and execution of a license agreement with plaintiff.  Any attempt by defendants to construe the contractual language differently is unavailing as a matter of law.  Issues of contract interpretation are matters of law for the Court, and are not subject to determination by a jury. <u>Union Electric Company v. Southwestern Bell Telephone L.P.</u>, 378 F.3d 781, 786 (8th Cir. 2004); <u>Swartz v. Mann</u>, 160 S.W.3d 411, 414 (Mo.App. 2005).  There

---

[2] There appears to exist a dispute of fact as to whether plaintiff ever received a letter from Mr. Schulte's counsel, dated March 26, 2004, in which counsel clarifies the purchase offer amount.  The existence of this letter, and plaintiff's receipt of it, are irrelevant to the Court's summary judgment analysis.  In general, issues concerning defendants' compliance with and plaintiff's proper exercise of the Right of First Refusal are not the focus of Count I or the summary judgment analysis.

4

exists no ambiguity of language or structure rendering uncertain the interpretation of Section VIII with respect to these independent rights reserved by plaintiff with respect to any transfer of the pharmacy.

Defendants argue that the provisions are unconscionable and therefore unenforceable. As plaintiff points out, unconscionability is an affirmative defense which defendants waived by their failure to plead it in their answer [Doc. #25]. <u>Chouteau Auto Mart, Inc. v. First Bank of Missouri</u>, 148 S.W.3d 17, 25-26 (Mo.App. 2004); <u>In re Estate of Looney</u>, 975 S.W.2d 508, 520 (Mo.App. 1998). In any event, the Court would reject the defense on its merits as a matter of law. Missouri law governs the license agreement. License Agreement [Doc. #18.1], §XII, p.8. Under Missouri law:

> an unconscionable contract is one "such as no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other." <u>Liberty Financial Management v. Beneficial Data</u>, 670 S.W.2d 40, 49 (Mo.App. 1984). Unconscionable is defined as "'an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'" <u>State Dept. Soc. Ser. v. Brookside Nursing</u>, 50 S.W.3d 273, 277 (Mo.banc 2001)(quoting Restatement (Second) of Contracts section 153 (1981)).

<u>Smith v. Kriska</u>, 113 S.W.3d 293, 298 (Mo. App. 2003). Although more limiting than desirable to the licensees, the requirement of plaintiff's approval for a transfer of the pharmacy is not unduly harsh in view of the grantor's interest in the franchises it licenses and its rights and investment in their success. The

5

provisions of Section VIII are plain on their face, cannot be claimed to have come as a surprise to the licensees, and are not shown to be unconscionable.

For all the foregoing reasons, the Court concludes as a matter of law that defendants breached the License Agreement as alleged in Count I, by selling the pharmacy without plaintiff's express written consent.  Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment on the issue of defendants' liability on Count I of the complaint [Doc. #32] is granted.  The Court finds defendants' liability for breach of the License Agreement as alleged in Count I to be established as a matter of law.


Dated this     22      day of September, 2005.


/s/ Donald J. Stohr
UNITED STATES DISTRICT JUDGE